Curia, per

Evans, J.
The question which has been argued, and that which I propose to discuss and decide, is, whether the defendant, Huff, has forfeited his right to remain within the prison bounds, by his refusal to assign his schedule. Before the Act of 1788,(a) commonly called the Prison Bounds’Act a defendant arrested on a ca. sa. was confined within the walls of the jail, and could be relieved from imprisonment only by paying the debt, or a discharge under the Act of 1759.(b) ’’‘The great object of the Act of 1788, seems to have been, to alleviate the harshness and severity of the common law imprisonment, by providing an expeditious mode of discharge, on a surrender of his property, and also to enlarge the limits within which he was to be confined, upon his giving to the Sheriff satisfactory security to remain within the prison limits. The defendant contends that those two provisions are independent of each other. He may apply for his discharge without having availed himself of the prison bounds, and he may enjoy the privileges of the bounds without assigning his schedule.
By the 2d section of the Act, a prisoner confined on mesne process may be admitted to the bounds, upon his giving to the Sheriff satisfactory security not to go or be without the prison rules; and by 3d section, prisoners in execution may be admitted to the same privileges on the same terms, with the addition that they will, within forty days, render to the Clerk of the Court a schedule, on oath, of their whole estate, or so much as will pay and satisfy the sums due on the executions on which they are confined. By the 4th section, the Clerk of the Court, within ten days after the receipt of the schedule, is required “to give public notice that the prisoner will be liberated and the property assigned, unless satisfactory cause to the contrary be shown before one or more of the Judges of the Court where the process originated, or one or more of the Commissioners of Special Bail in the circuit districts.” And if no satisfactory cause be shown, the Judge, or Justice, or Commissioner of Special Bail, before whom the prisoner may be brought, shall order an assignment of the prisoner’s estate, and the prisoner shall thereupon be discharged. In this case, no application for a discharge has ever been made by Ruff, nor has any order been made that he should assign his schedule. If such an order had been made by competent authority, and the defendant had refused compliance, lie might have been ordered into close confinement for his disobedience. This clause does not take away his right to the *3 bounds, but merely makes the assignment of his schedule a condition precedent to his discharge. By the *7th section, if a prisoner committed on execution shall not give in a schedule agreeably to the tenor of his bond, he shall no longer be entitled to the benefit of the prison rules, but his bond shall be forfeited *and assigned to the plaintiff. But this section can only apply, I apprehend, to those cases where he has rendered no sehedule, or where the schedule, on a trial before a competent tribunal, has been found to be false. By the 11th section, in cases of escape, the plaintiff may proceed by recaption of the defendant; I suppose, by issuing new process against him. These are all the provisions of the Act which can have any application to the defendant’s case. It is not pretended he is guilty of an escape, and, therefore, the 11th section does not embrace his case. He has never applied for a discharge, and no order has been made that he should assign his schedule, and, therefore, no process can issue for a contempt. Ho suggestion that his schedule is false has ever been filed, and no proceedings have been had to establish the fact. The case, then, stands thus: The defendant, Ruff, agreeably to the tenor of his bond, has filed a schedule of his estate, the truth of which the plaintiff has not controverted : he chooses to remain within the bounds, and declines to apply for a discharge, or to assign his schedule. Is there anything in this which deprives him of the benefit of the bounds? Upon a careful review of all the provisions of the Act, I am constrained, contrary to my first impressions, to come to the conclusion that the defendant has done nothing to forfeit his right to remain within the bounds; and such, it seems, has been the practical construction of the Act; for some of my brethren remember more than one case where debtors have lived for years within the prison rules, without applying for a discharge or assigning their schedule. It may seem strange that the law should require the prisoner to render a schedule, and the Clerk to give notice to the creditor, unless it was intended he should assign Ms effects for the payment of the debt. But I am not at liberty to supply the omission of what I may conjecture was intended. I cannot look beyond the Act for its construction.
See Act of 1841. 11 Stat. 153. An. 4 Rich. 13, 296. An.
Gregg for the motion. Clarice, contra.
The motion is, therefore, refused :
the whole court concurring.

 5 Stat. 78. An.

 4 Stat. 86. An.